USCHER, QUIAT, USCHER & RUSSO
A Professional Corporation
433 Hackensack Avenue, 2nd Floor
Hackensack, NJ 07601
Phone  201-342-7100
Fax     201-342-1810
*Attorneys for Plaintiff,*
*Patient Care Associates, L.L.C.*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---

PATIENT CARE ASSOCIATES, L.L.C.,

    Plaintiff,

vs.

NEW JERSEY CARPENTERS HEALTH FUND,

    Defendants.

Hon. Stanley R. Chesler, U.S.D.J.
Civil Action No. 10-1669 (SRC)

---

PLAINTIFF PATIENT CARE ASSOCIATES, L.L.C.'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

Michael E. Quiat, Esq.
USCHER, QUIAT, USCHER & RUSSO
A Professional Corporation
433 Hackensack Avenue, 2nd Floor
Hackensack, NJ 07601
Phone  201-342-7100
Fax     201-342-1810

## **STATEMENT OF FACTS**

Defendant argues that Plaintiff is barred from proceeding in this litigation because it failed to "exhaust its administrative remedies" in connection with these ERISA claims.

Defendant's Motion must be denied for two reasons. First, it is undisputed that the Defendant failed to apprise the Plaintiff of its appellate rights, or to apprise the Plaintiff's assignors of their appellate rights with respect to these claims. (See Depositions of Karen Kaufman at P. 34, attached as Exhibit B to Plaintiff's Motion for Summary Judgment; Jack Sullivan at PP. 65-67, 77 attached as Exhibit A; George Laufenberg at PP. 42-43, attached as Exhibit C). Indeed, notwithstanding these multiple adverse benefit determinations, it is undisputed that none of the assignors or the Plaintiff was ever advised as to the Defendant's appellate procedure in connection with these claims. This is a clear violation of federal law. 29 C.F.R. § 503-1(g)(iv).

Moreover, putting aside the obvious regulatory deficiency in the manner in which the Defendant failed to communicate with the Plaintiff and its assignors about appeal rights and procedures, the facts as established in discovery reflect clearly that (1) Plaintiff made multiple efforts to get Defendant to reconsider its position, to no avail, and (2) any administrative appeals if prosecuted in this case would have been futile. Plaintiff is not required to exhaust administrative remedies, where, as here, to do so would be an exercise in futility.

### *Background*

As the Defendant's Health Fund Manager Jack Sullivan made clear in his deposition, the Defendant contracted with Horizon Blue Cross Blue Shield in 2004 in order to permit its members access to a much broader network of providers. (Sullivan

1

Deposition at PP. 33-35 attached as Exhibit A). Prior to this time, many members were forced to use out-of-network providers because there were no in-network providers available in their geographic area. (Id.) Once the Defendant joined the Horizon network however, it was the Fund's stated position that it would strictly enforce its Fee Schedule against out-of-network providers. (Id.)

At his deposition, Health Fund Manager Jack Sullivan explained what happened with out-of-network benefit appeals after 2004:

> Answer: "Well, if they appealed a claim that was out-of-network, in most cases I can recall that the claim would be denied, **they've used an out-of-network provider, and they had opportunities to use in-network providers.**"
>
> ***
>
> "Question: You're saying that as of 2004, the Board is more - - the Board of Trustees is more inclined to enforce the out-of-network limitations because of the expansion of the network providers?
>
> Answer: **I would say that's fair.**"

(Emphasis added) (Deposition of Jack Sullivan at PP. 34 and 114, attached to Exhibit A to Plaintiff's Motion for Summary Judgment).

The Fund Administrator George Laufenberg was even clearer in this regard:

> "Question: Do you have any personal knowledge of any out-of-network Ambulatory Surgical Center appealing your Fee Schedule determination to the Board of Trustees?
>
> Answer: No.
>
> Question: Has it ever happened, to your knowledge?
>
> Answer: I'm trying to think. **Someone may have tried, but we just, you know, disregarded it I'm sure.**"

2

(Emphasis added) (Deposition of George Laufenberg at PP. 44 and 45, attached to Exhibit C to Plaintiff's Motion for Summary Judgment).

As to the issue of notice to the plan beneficiaries or their assignees regarding appeal rights, the evidence is also clear and compelling, that Defendant failed utterly to advise anyone of the Fund's appeal rights and procedures, in clear violation of federal law. 29 C.F.R. § 503-1(g)(iv). Karen Kaufman, who was the individual at the Defendant who dealt directly with members and their providers, testified at her deposition:

> "Question: Now, in connection with the dispute with Patient Care Associates, did you ever give a written document to Patient Care Associates or any one of your covered members about the procedure for appealing an adverse benefit determination?
>
> Answer: Not to the providers, not to Patient Care, no.
>
> Question: Did you provide it to the members?
>
> Answer: I don't remember. I don't know if they called and asked because it would have been verbal.
>
> \*\*\*
>
> Question: When you write a letter telling a provider that you are making an adverse benefit determination, in that letter, do you advise the member or the provider that they have a right to appeal and what they have to do to pursue that appeal?
>
> Answer: **I don't tell them how to appeal.** I would tell them to contact the office and I would give them the instructions.
>
> \*\*\*
>
> Question: When you are writing a letter to make an adverse benefit determination, whether you send it to a member or a provider, do you tell people in that letter you have a right to appeal and here's how you do it, yes or no?

3

| | |
|---|---|
| Answer: | I tell them to call and we'll give them the information so they have the right to contact us to get further information. |
| | \*\*\* |
| Question: | And when you made an adverse benefit determination, did you communicate that to a provider or to the member? |
| Answer: | In writing. |
| | \*\*\* |
| Question: | And so is it correct to say that you would prepare a letter, a document explaining what your benefit determination was? |
| Answer: | Correct. |
| Question: | And was there a checklist of information that you needed to contain in that letter? |
| Answer: | Yes. |
| Question: | And where is that checklist? |
| Answer: | I don't have it. It was verbalized. We discussed what we would put in the letter. You always put in the letter why the claim was denied, what the service was and the fact that they should contact the office with any questions in regard to a determination. |
| Question: | Ok. Now, in that checklist that was discussed that you just testified about, was it discussed that you should put in that letter that they have a right to appeal and they need to be told the procedure? |
| Answer: | **No.** |
| Question: | No, ok. And that's the procedure that you followed correct? |
| Answer: | **Yes."** |

(Emphasis Added) (Deposition of Karen Kaufman at P. 34, attached as Exhibit B to Plaintiff's Motion for Summary Judgment).

4

This position was confirmed by both the Health Fund Benefits Manager Jack Sullivan, as well as the Fund Administrator George Laufenberg. In his deposition testimony, Sullivan testified:

> "Question: And did the Fund ever advise Patient Care Associates or [the patient] of the appeals procedure with respect to that facility fee payment?
>
> Answer: No. That claim was never appealed.
>
> Question: Right. And, in fact, you, meaning the Fund, adhered to the 120% of Medicare despite a number of challenges from Patient Care Associates, correct?
>
> Answer: **We stuck to our Fee Schedule, yes**.
>
> Question: But you never took that to the Board of Trustees?
>
> Answer: We were not asked to, that's correct.
>
> \*\*\*
>
> Question: Did you, the Fund, ever advise [the patient] or Patient Care Associates in writing of the appeal procedure you expected to be followed in connection with the facility fees being challenged in her case?
>
> Answer: We were not asked to, no.
>
> Question: So the answer is no?
>
> Answer: Other than the Summary Plan Description, you know, explaining the rights to appeal, the issue did not come up.
>
> Question: So it's your position, as I understand it, that the Health Fund was not required to inform Patient Care Associates or [the patient] of the appeal procedures to be followed if she wanted to challenge the facility fee payment in this case?

5

| | |
|---|---|
| Answer: | We were not asked. That claim was not appealed to the Board. |

\*\*\*

| | |
|---|---|
| Question: | **My question is this: did you, the Fund, advise Patient Care Associates or [the patient] in writing as to the appeal procedure you expected to be followed if they wanted to challenge the facility fee payment in this case?** |
| Answer: | No." |

(Emphasis added) (Deposition of Jack Sullivan at PP. 65-67, attached as Exhibit A to Plaintiff's Motion for Summary Judgment).

George Laufenberg was also clear on this subject:

| | |
|---|---|
| "Question: | Are you familiar with the format of the EOB's [Explanation of Benefits] generated by the Fund? |
| Answer: | Somewhat, yes. |
| Question: | Do you know whether there is any information contained in the EOB's with respect to employees' right to appeal? |
| Answer: | **I don't believe there is anything on there for their right to appeal.** |

\*\*\*

| | |
|---|---|
| Question: | With regard to providers who are seeking payment from the Fund for services rendered, for example, an out-of-network Ambulatory Surgical Center, do you know whether the Fund has an obligation to inform those providers of the appeal rights and the mechanism for appeal with respect to adverse benefit determinations? |
| Answer: | **No. I don't feel they have a right.**" |

(Emphasis added) (Deposition of George Laufenberg at PP. 42-43, attached as Exhibit C to Plaintiff's Motion for Summary Judgment).

6

Similarly, in discovery, Plaintiff specifically asked the Defendant for any information reflecting a successful appeal to the Board of Trustees by any out-of-network Ambulatory Surgical Center in New Jersey. The Defendant responded that there were no such successful appeals. (See correspondence of Michael E. Quiat dated July 28, 2011, and correspondence of Gary Carlson dated August 25, 2011, attached to the accompanying Affidavit of Michael E. Quiat as Exhibits 1 and 2).

In view of the above, Plaintiff's alleged failure to exhaust administrative remedies is a red herring in this case. Plaintiff did challenge the inadequate reimbursements on numerous occasions in writing and by telephone, to no avail. Moreover, neither Plaintiff nor its assignors were ever properly informed as to the Fund's purported appeal rights and procedures, in clear violation of federal law, and in any event, such appeals would obviously have been futile.[1]

---

[1] With respect to the claim concerning Count Two of Plaintiff's Second Amended Complaint, Plaintiff agrees that this claim is preempted, and hereby withdraws that claim.

7

## POINT I

## THE FACTS OF THIS CASE REFLECT THAT EXHAUSTING ADMINISTRATIVE REMEDIES WOULD HAVE BEEN FUTILE

It is the general rule in this Circuit that to the extent plan beneficiaries seek to enforce the terms of a plan, they must first exhaust their administrative remedies before seeking judicial relief. *Berger v. Edgewater Steel Company*, 911 F. 2d 911 (3d Cir. 1990); *Weldon v. Kraft, Inc.*, 896 F. 2d 793 (3d Cir. 1990); *Zipf v. American Telephone and Telegraph*, 799 F. 2d 889 (3d Cir. 1986). Notwithstanding, an alleged failure to exhaust is excused in this Circuit where a fact sensitive balancing of factors reveals that exhaustion would be futile. *Metropolitan Life Insurance Co. v. Price*, 501 F. 3d 271 (3d Cir. 2007); *Harrow v. Prudential Insurance Company of America*, 279 F. 3d 244 (3d Cir. 2002). Moreover, application of the exhaustion requirement is non-jurisdictional and lies within the sound discretion of the Court. *Metropolitan Life Insurance Company v. Price*, 501 F. 3d at 279; *Tobias v. PPL Electric Utilities Corporation*, 2004 WL 1047829 (E.D.PA) ("The decision to enforce the exhaustion requirement is committed to the sound discretion of the Trial Court."). *Harrow*, 279 F. 3d at 251.

Excusing the alleged failure to exhaust administrative remedies on the basis of futility requires that Plaintiff provide a "clear and positive showing" of futility to be excused. *Berger v. Edgewater Steel Company*, 911 F. 2d at 916.

In *Harrow v. Prudential Insurance Company of America*, 279 F. 3d 244 (3d Cir. 2002), the Third Circuit set forth a five part test for analyzing claims of futility in the face of allegations of failure to exhaust. The Court explained:

> "Whether to excuse exhaustion on futility grounds rests upon weighing several factors, including: (1) whether

8

> Plaintiff diligently pursued administrative relief; (2) whether Plaintiff acted reasonably in seeking immediate judicial review under the circumstances; (3) existence of a fixed policy denying benefits; (4) failure of the insurance company to comply with its own internal administrative procedures; and (5) testimony of plan administrators that any administrative appeal is futile. Of course, all factors may not weigh equally. See *Berger*, 911 F. 2d at 916-17; *Metz v. United Counties Bank Corp*, 61 F. Supp. 364, 383-84 (D.N.J. 1999)."

279 F. 3d 244 at 250.

In the instant matter, the facts weigh heavily in favor of applying the futility exception explained by the Third Circuit in *Harrow*. First, there is no question that Plaintiff in this case has diligently pursued its administrative rights, making certain that its claims for benefits were properly filed and processed by the Defendant Fund. Indeed, in the case of patient EC, the record shows that the Plaintiff submitted numerous letters and appeals to the Fund office seeking to overturn the original refusal to pay benefits beyond its purported Fee Schedule.

Moreover, the decision by Plaintiff to seek judicial intervention at this stage was reasonable given the systematic refusal of the Defendant to pay any fees beyond their purported "Fee Schedule." Rather than refuse to treat patients covered by the Fund, as the Defendant inappropriately suggests Plaintiff should have done (see Affirmative Defenses in Defendant's Answer to the Second Amended Complaint), Plaintiff was faced with either accepting continued inadequate and unlawful reimbursement levels from the Defendant, or bringing the matter to a head by litigating the legal validity of the purported Fee Schedule. Clearly, its choice to go to Court made perfect sense.

That there is a fixed policy denying payment of benefits beyond the purported Fee Schedule is apparent from the evidence adduced during discovery. All witnesses

9

confirmed that benefits would not be paid in excess of 120% of Medicare. Moreover, the correspondence between Plaintiff and Defendant with respect to patient EC reflects that the Fund was adamant in enforcing its purported Fee Schedule, and was not interested in reevaluating its position or trying to compromise its assertions.

In addition, there is ample evidence that Defendant failed to follow its own internal administrative procedures in the handling of these various claims for benefits. First, it is clear that the Defendant failed to apprise any of the claimants, or their assignee as to the appeal procedures which the plan purportedly required. Notwithstanding all witness' testimony that neither patients nor Plaintiff were ever informed in writing at the time their claims were adversely determined that they had a right to appeal and the procedures for such appeal, the Defendant's Summary Plan Description specifically requires, consistent with ERISA, the following:

> "Any written notice of the denial of a claim for benefits shall: (d) describe the Fund's review procedures and the time limits applicable to such procedures, including a statement of your right to bring a civil action under § 502(a) of ERISA following a denial on review."

(See the Summary Plan Description at P. 68 attached to Plaintiff's Motion for Summary Judgment as Exhibits D and E).

Of course, this is not only a requirement of Defendant's SPD, but it is also an express requirement of federal law. 29 C.F.R. § 503-1(g)(iv) requires that every Employee Welfare Benefit Plan must provide certain information to a claimant when making an adverse benefit determination, including: "(iv) *a description of the plan's review procedures and the time limits applicable to such procedures...*"

Notwithstanding, the uncontroverted evidence reflects that the Defendants failed to apprise anyone as to the proper appellate procedure as required by the plan and by the regulations.

Finally, the testimony of the officials who run the Defendant establishes with compelling candor that any administrative appeals by the Plaintiff in this matter would have been futile. Indeed, George Laufenberg, the highest administrative official employed by the Defendant Fund, bluntly stated that he was unaware of *any* appeals ever filed by out-of-network ASC's to the Board of Trustees, that the Fund was *not* obligated to inform such out-of-network ASC's of their appeal rights, and that had such an administrative appeal been filed, it would have been "disregarded…I am sure." (See Laufenberg Deposition at PP. 44-45, attached as Exhibit C, to the Plaintiff's Summary Judgment Motion). Jack Sullivan similarly pointed out that given the expansion of in-network providers obtained through the Fund's agreement with Horizon Blue Cross Blue Shield in 2004, the Board of Trustees was not likely to consider any appeals from out-of-network ASC's. (See Deposition of Jack Sullivan at PP. 33-35, 114, attached as Exhibit A to Plaintiff's Summary Judgment Motion).

Clearly, an analysis of the facts of this case reflects that any administrative appeal of the adverse benefit determinations in this case would be futile. *Gunning v. Unysis Corporation*, 2009 WL 249793 (W.D.PA.) (Futility shown by failure of plan administrator to comply with plan procedures, and by testimony by plan administrators indicating appeals would not be fruitful); *Olay v. Hearne*, 2007 WL 1520094 (W.D.PA.).

As the Third Circuit stated in *Metropolitan Life Insurance Company v. Price*, 501 F. 3d 271, 279 (3d Cir. 2007), the administrative exhaustion requirement under ERISA is

11

not a "rigid jurisdictional rule," but rather is a form of "prudential exhaustion [that] provides flexible exceptions for waiver, estoppel, tolling or futility."[2]

Finally, it has been held that whether or not futility should apply to an alleged failure to exhaust administrative remedies is at its heart a question of fact which precludes summary judgment. *Karpiel v. Ogg, Cordes, Murphy and Ignelzi, L.L.P.*, 297 Fed. Appx. 192 2008 WL 4721490 (3d Cir. 2008); *Serio v. Wachovia Securities, L.L.C.*, 2007 WL 2462626 (D.N.J.) ("Plaintiffs raised numerous questions of fact as to whether [they] attempted to obtain administrative relief and whether such relief would have been futile. Accordingly, this Court is satisfied that summary judgment is inappropriate").

For all the reasons set forth herein, to the extent that the Court finds the Plaintiff failed to exhaust administrative remedies in connection with these claims, such

---

[2] In this regard, it is highly pertinent that Plaintiff's discovery requests for evidence of other administrative appeals by other out-of-network Ambulatory Surgical Centers was met with a confirmation that there were none. (See correspondence from Michael E. Quiat to Gary Garlson dated July 28, 2011, and response from Gary Carlson to Michael E. Quiat dated August 25, 2011, attached to the Affidavit of Michael E. Quiat as Exhibits 1 and 2). It also bears mentioning that, notwithstanding the apparent concession that the Plaintiff did not comply with the administrative appeal requirements set forth in the plan, about which it was totally uninformed, there is strong evidence to suggest that Plaintiff did in fact vigorously seek to challenge and overturn the imposition of the purported "Fee Schedule," to no avail. Indeed, Plaintiff submitted no less than *four* different written communications, including attorney's letters, and made numerous telephone appeals, seeking to challenge the determination, all of which were rebuffed summarily. (See correspondence dated August 20, 2009 to/from PCA and NJ Carpenters Fund attached to the Affidavit of Michael E. Quiat as Exhibit 3; correspondence dated September 18, 2009 from PCA to NJ Carpenters Fund, attached as Exhibit 4; correspondence dated September 21, 2009 from NJ Carpenters Fund to PCA, attached as Exhibit 5; correspondence dated September 25, 2009 from Michael E. Quiat, attached as Exhibit 6; correspondence from Gary Carlson to Michael E. Quiat dated September 28, 2009, attached as Exhibit 7; correspondence from Michael E. Quiat to Gary Carlson dated October 8, 2009, attached as Exhibit 8; and correspondence from Gary Carlson to Michael E. Quiat dated October 14, 2009, attached as Exhibit 9; correspondence from Gary Carlson to Michael E. Quiat dated November 6, 2009, attached as Exhibit 10). Significantly, not once in any of these written communications back and forth between the parties was it suggested that the Plaintiff appeal the determination to the Board of Trustees. Obviously, such a submission would have been futile, as the Defendant's employees essentially conceded in their own testimony. There is however a question as to whether or not the actions of the Plaintiff in challenging the benefit determinations with respect to patient EC were sufficient to comply with the appeal requirements of the plan. See eg, *Stapperfenne v. Nova Health Care Administrators*, 2007 WL 4389788 (D.N.J.) ("Defendants have suggested no specific reason why Plaintiff's letters fell short of the requirements for an appeal, and this Court can discern no deficiencies. Thus, a reasonable fact finder could determine that all three letters constituted appeals under the terms of the plan.").

exhaustion should be excused on the basis of futility. Alternatively, questions of fact relating to the application of the futility exception should be left for the trier of fact. *Serio v. Wachovia Securities*, 2007 WL 2462626 (D.N.J.).

                                                Respectfully submitted,

                                                USCHER, QUIAT, USCHER & RUSSO
                                                A Professional Corporation
                                                433 Hackensack Avenue, 2nd Floor
                                                Hackensack, NJ 07601
                                                Phone  201-342-7100
                                                Fax     201-342-1810

Dated:  February 6, 2012         By:     <u>/s/ Michael E. Quiat</u>
                                                MICHAEL E. QUIAT (MEQ-8238)
                                                ***Attorneys for Plaintiff,***
                                                ***Patient Care Associates, L.L.C.***

G:\Corporate\Patient Care Associates, LLC\Patient Care vs. NJ Carpenters Health Fund\SJ Motion Oppositions 2-7-12\Brief in Opposition.docx