NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| PATIENT CARE ASSOCIATES, L.L.C., : | |
| : | **Civil Action No. 10-1669 (SRC)** |
| Plaintiff, : | |
| : | **OPINION** |
| v. : | |
| : | |
| NEW JERSEY CARPENTERS HEALTH : | |
| FUND, : | |
| : | |
| Defendant. : | |
| : | |

**CHESLER**, District Judge

      This matter comes before the Court upon the parties' cross-motions for summary judgment [docket entries 51 & 52]. The motions have been fully briefed, and the Court proceeds to rule on the motions without oral argument pursuant to Federal Rule of Civil Procedure 78. The Court has considered the parties' written submissions, and for the reasons discussed below, it will grant Defendant's motion for summary judgment and deny Plaintiff's motion.

**I.**    **FACTS**

      This is an action concerning the allegedly improper underpayment of healthcare benefits under the New Jersey Carpenters Health Plan (the "Plan"), a self-funded welfare benefit plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, et seq. In brief, the pertinent facts are as follows:

      Plaintiff Patient Care Associates, L.L.C. ("Plaintiff" or "PCA") is a licensed ambulatory surgical center located in Englewood, New Jersey. PCA, a provider of healthcare services, does

not have a contract with the Plan's sponsor, Defendant New Jersey Carpenters Health Fund ("Defendant" or "the Fund"), setting forth negotiated discounted rates for services.  In other words, it is not part of the Plan's preferred provider network.  The Plan does, however, provide coverage to its members for procedures performed at out-of-network or "non-participating" surgicenters.  Both versions of the Plan at issue in this case provide, in relevant part, as follows:[1]

> **SURGICENTER BENEFITS**
>
> As an alternative to hospital inpatient or outpatient surgery, you may elect to have your procedure performed at a surgicenter.  You must contact the Fund Office to pre-certify your same day procedure at the surgicenter as well as to make sure the surgicenter is in-network to reduce your out-of-pocket expense.  **Non-participating surgicenters will be reimbursed only up to our fee schedule and you will be responsible for the difference**.

(2004 Plan at 36; 2009 Plan at 37) (emphasis added).  They further provide:

> Reimbursement for eligible services is made based on 100% of our fee schedule.  If services are rendered by a participating provider, the provider will accept our payment as payment in full for eligible services.  If services are rendered by a non-participating provider, you will have an out-of-pocket expense if the provider's charge is more than our fee schedule.  Therefore, we encourage you to use participating providers whenever possible.
>
> If you or the provider want to know what the Fund Office will pay for a particular service, a pre-determination for services must be submitted **IN WRITING** to the Fund Office by the provider.  Fee schedules will not be given over the phone.

(2004 Plan at 37; 2009 Plan at 38) (emphasis in original).

---

[1] The underlying claims for out-of-network surgicenter benefits arise from services rendered at PCA on various dates spanning the time period of September 2008 to February 2011.  (See Second Am. Compl., Ex. A.)  Thus, the claims are governed by either the Plan effective September 1, 2004 or the Plan effective September 1, 2009.  The record also contains a third version of the Plan, effective April 1, 2011, but none of the underlying facility charge claims arise on or after April 1, 2011.

According to the Second Amended Complaint, PCA provided facility services in connection with surgical procedures performed at PCA on various individuals, identified in the pleading, who had health coverage under the Plan. The total facility fees charged by PCA for the 12 claims at issue in this lawsuit is $210,557.00. PCA submitted these claims to the Fund seeking payment pursuant to an assignment of benefits given by each of the patients covered by the Plan. According to PCA, the Fund has paid only $16,205.33 of these charges. The remainder of the claims was denied as exceeding the fee schedule.

Claims denials and appeals are expressly addressed in the Plan in a clearly labeled section. Pursuant to ERISA, the Plan creates a procedure authorizing the covered individual, or his authorized representative, to appeal the Fund's denial of a claim to the Fund's Board of Trustees. The administrative appeal procedure set forth in the Plan gives detailed instructions regarding the manner in which an appeal must be filed, the information it must contain and the time within which it must be filed, among other information. It also sets forth Plan's responsibilities with regard to making an appeals determination and notifying the appellant of that determination.

PCA did not appeal any of the 12 surgicenter facility claims at issue through the administrative procedure established by the Plan. Instead, on or about March 5, 2010, PCA proceeded to initiate a civil action against the Fund in New Jersey state court seeking recovery of the unpaid charges under a breach of contract theory, claiming that Defendant's refusal to pay health benefits in connection with the surgicenter facility services provided to Plan participants is

contrary to the Plan. Defendant thereafter removed the case to federal court based on complete preemption under ERISA. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as it arises under a question of federal law.[2]

## II. DISCUSSION

### A. Summary Judgment Standard

The standard upon which a court must evaluate a summary judgment motion is well-established. Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Kreschollek v. S. Stevedoring Co., 223 F.3d 202, 204 (3d Cir. 2000). In deciding a motion for summary judgment, a court must construe all facts and inferences in the light most favorable to the nonmoving party. See Boyle v. County of Allegheny Pennsylvania, 139 F.3d 386, 393 (3d Cir. 1998). The moving party bears the burden of establishing that no genuine issue of material fact remains. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325.

---

[2] For reasons the Court will explain below, Plaintiff's claim, though pled as a breach of contract claim, must be construed to plead for relief under ERISA § 502(a)(1)(B).

Once the moving party has properly supported its showing of no triable issue of fact and of an entitlement to judgment as a matter of law, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial. Anderson, 477 U.S. at 248; see also Fed.R.Civ.P. 56(c) (setting forth types of evidence on which nonmoving party must rely to support its assertion that genuine issues of material fact exist). "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." Schoch v. First Fid. Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990). "A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial." Gleason v. Norwest Mortg., Inc., 243 F.3d 130, 138 (3d Cir. 2001). If the nonmoving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, . . . there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Katz v. Aetna Cas. & Sur. Co., 972 F.2d 53, 55 (3d Cir. 1992) (quoting Celotex, 477 U.S. at 322-23).

  **B.**  **Analysis**

The Court begins by noting that although Plaintiff's Second Amended Complaint seeks relief under a breach of contract theory, the instant legal challenge to the denial of health benefits under the ERISA-governed Plan must be construed by the Court as a claim to recover unpaid benefits pursuant to ERISA § 502(a)(1)(B). See Metropolitan Life Ins. Co. v. Taylor, 481 U.S.

58, 62–63 (1987) (holding that a suit by a beneficiary to recover benefits under an ERISA-governed plan "falls directly under § 502(a)(1)(B) of ERISA, which provides an exclusive federal cause of action for resolution of such disputes."). ERISA § 502(a) is the statute's civil enforcement mechanism, and subsection (1)(B) expressly grants a plan participant or beneficiary the right to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). ERISA preemption of state law causes of action is well-established. See Aetna Health, Inc. v. Davila, 542 U.S. 200, 209 (2004). The Supreme Court has held that "the ERISA civil enforcement mechanism is one of those provisions with such 'extraordinary pre-emptive power' that it 'converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" Id. (quoting Metropolitan Life, 481 U.S. at 65-66).

 The statute itself contains a preemption provision. ERISA § 514(a) provides that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). Suits brought by participants or beneficiaries of ERISA plans concerning matters that "relate to" those plans are governed by the cause of action provided by ERISA § 502(a). Davila, 542 U.S. at 208-09. The term "relate to," in the context of ERISA's preemption provision, means that the claim "has a connection with or reference to" an ERISA plan. Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 96-97 (1983). In this lawsuit, Plaintiff claims that the Fund underpaid out-of-network surgicenter claims by denying PCA, as the

assignee of Plan members, benefits to which it is allegedly entitled under the Plan.  Thus, it is clear that PCA's claim "relates to" an ERISA plan.[3]

Defendant argues that it is entitled to summary judgment on PCA's ERISA claim for benefits because PCA has failed to exhaust its administrative remedies under the Plan.  ERISA requires covered benefit plans to provide administrative remedies for individuals whose claims for benefits have been denied.  29 U.S.C. § 1133.  It is well-established that an ERISA plan participant must exhaust the administrative remedies under the plan before she may initiate a lawsuit to recover benefits or otherwise enforce her rights under the terms of the plan pursuant to the cause of action created by ERISA § 502(a)(1)(B).  Harrow v. Prudential Ins. Co. of Am., 279 F.3d 244, (3d Cir. 2002).  While the statute itself does not expressly require exhaustion of administrative remedies as a prerequisite to sue, the United States Court of Appeals for the Third Circuit has described the exhaustion requirement as a judicial innovation serving many sound

---

[3] A claim to recover benefits owed under an ERISA plan may be brought, pursuant to the statute, by a plan participant or beneficiary.  29 U.S.C. § 1132(a).  PCA is admittedly neither a participant nor a beneficiary of the Plan but claims standing to sue for violation of the Plan's terms under a theory of assignment.  The Fund does not contest PCA's standing to assert a claim for unpaid benefits under ERISA § 502(a)(1)(B).

This Court has previously held that Third Circuit jurisprudence on derivative standing to assert a claim under ERISA § 502(a), while an unsettled question, appears to support the viability of a standing by assignment theory.  Franco v. Conn. Gen. Life Ins. Co., — F. Supp. 2d —, 2011 WL 4448908, at *6 (D.N.J. Sept. 23, 2011).  It has also held, however, that to demonstrate that it has standing by assignment, the proponent of an ERISA § 502(a) claim must establish that the assignment granted by an ERISA plan beneficiary or participant encompasses the assignor's legal claim to benefits under the plan, as opposed to, for example, merely authorizing the assignee to collect reimbursement of those benefits directly from the ERISA plan rather than the patient.  Id. at * 7-8.

Nevertheless, the Court will not, in this action, engage in an analysis of whether the assignments in the record suffice to confer ERISA standing on PCA, as PCA's claim under ERISA § 502(a) will be disposed of on other grounds.

policies, among others, reducing frivolous lawsuits, promoting the consistent treatment of claims for benefits, and enhancing fiduciary management of plans by preventing premature judicial intervention in the plan fiduciaries' decision-making process.  Metropolitan Life Ins. Co. v. Price, 501 F.3d 271, 279 (3d Cir. 2007) (citing Harrow, 279 F.3d at 249 and Amato v. Bernard, 618 F.2d 559, 567-68 (9th Cir.1980)).  The exhaustion requirement is a non-jurisdictional affirmative defense, and the burden of proving it accordingly falls on the defendant.  Id. at 280; see also Jakimas v. Hoffmann-La Roche, Inc., 485 F.3d 770, 782 (3d Cir. 2007) (holding that defendant bears the burden of proving an affirmative defense to plaintiff's ERISA claims).

The Court finds that the Fund, which bears the burden of proving the affirmative defense of failure to exhaust administrative remedies, has sufficiently demonstrated that, as a matter of law, its burden has been satisfied.  There is simply no dispute that PCA did not exhaust the administrative remedies made available under the Plan.  Even assuming that the assignment of benefits obtained by PCA in connection with each underlying service validly grants it standing to sue for benefits under the Plan, the assignment can give PCA no greater rights than those possessed by the Plan participant or beneficiary. See North Chicago Rolling-Mill Co. v. St. Louis Ore & Steel Co., 152 U.S. 596, 620 (1894) (holding that assignee "occupies the same position as his assignor, and is subject to the same equity."); Medtronic AVE, Inc. v. Advanced Cardiovascular Sys., Inc., 247 F.3d 44, 60 (3d Cir. 2001) (holding that "assignment of a contract will result in the assignee stepping into the shoes of the assignor with regard to the rights that the assignor held and not in an expansion of those rights to include those held by the assignee.").  It is, indeed, axiomatic that "the rights of an assignee can rise no higher than those of the assignor."  Arnold M. Diamond, Inc v. Gulf Coast Trailing Co., 180 F.3d 518, 524 (3d Cir. 1999) (citing

Corbin on Contracts, § 861, at 421–23 (1960); 3 Williston on Contracts, § 404, at 5 (3d ed. Jaeger ed.1960)). Importantly, an equally fundamental principle of contract law holds that a claim brought by an assignee is subject to all defenses that could have been raised by the obligor against the assignor at the time of the assignment. Am. Lumber Corp. v. Nat'l R.R. Passenger Corp., 886 F.2d 50, 55 (3d Cir.1989); see also Restatement (Second) of Contracts § 336(2) ("The right of an assignee is subject to any defense . . . of the obligor which accrues before the obligor receives notification of the assignment . . . ."). By filing the instant ERISA action to recover Plan benefits as the assignee of Plan participants, PCA was similarly required under ERISA to exhaust administrative remedies under the Plan before initiating this civil action. The record clearly establishes that PCA did not comply with this obligation, and as such Plaintiff cannot prevail on its ERISA claim as a matter of law.

Plaintiff attempts to salvage its claim by arguing that it should be excused from the exhaustion requirement on grounds of futility. While the Third Circuit recognizes that an exception to the exhaustion requirement applies when "resort to the administrative process [under the ERISA plan] would be futile," it has held that a plaintiff merits this waiver only when the plaintiff makes "a clear and positive showing of futility." Harrow, 279 F.3d at 249 (quoting Berger v. Edgewater Steel Co., 911 F.2d 911, 916 (3d Cir. 1990) and Brown v. Cont'l Baking Co., 891 F. Supp. 238, 241 (E.D. Pa. 1995)). In Harrow, the Court of Appeals identified various factors a court may weigh to assess whether exhaustion should be excused on grounds of futility. They are:

>    (1) whether plaintiff diligently pursued administrative relief; (2) whether plaintiff acted reasonably in seeking immediate judicial review under the circumstances; (3) existence of a fixed policy denying benefits; (4) failure of the insurance company to comply with its own internal administrative procedures; and (5) testimony of plan administrators that any administrative appeal was futile.

Id. at 250. These factors need not all carry the same weight, and a court should consider the applicability of the futility exception in light of the circumstances of a particular case. Id.

Here, PCA has not demonstrated that it diligently pursued administrative relief. The record shows that PCA's efforts to challenge the benefits denials consisted mostly of phone calls to the Fund regarding the payment made on the claims. As to some claims, there is no evidence of any effort at all to dispute the benefit payment. The record contains a written dispute as to only one of the claims. As to the claim concerning a June 19, 2009 service provided to patient E.C., the record shows an exchange of letters between PCA and the Fund, in which PCA protests that the benefits determination by the Fund is unacceptable to PCA and the Fund replies that the Fund reimburses non-participating surgicenters according to the Plan and informs PCA that the fee schedule is set at 120% of the Medicare-approved facility fee schedule. Notably, some of the correspondence occurs through the parties' legal representation.

Beyond these phone calls and letters, no attempts were made to pursue administrative relief under the Plan in challenging the benefit determinations on the underlying claims. These communications fail to demonstrate a diligent pursuit of administrative remedies under the Plan, in light of the sophistication of the claimant, the fact that it was represented by counsel and its possession of all of the information necessary to challenge the denials through the process established by the Plan. The record demonstrates that on two occasions in 2009, in connection

with correspondence between counsel for PCA and counsel for the Fund concerning the E.C. claim, counsel for PCA was provided with a copy of the Plan.  The Fund also informed PCA repeatedly that the benefits determination was based on the fee schedule, as set forth in the Plan, and further informed PCA what the fee schedule was.  Moreover, individuals employed by PCA and knowledgeable of its billing practices testified that PCA routinely obtains insurance assignments from its patients and that it is quite familiar with the process of submitting appeals to insurance companies seeking additional payment on claims PCA believed were underpaid.  PCA's associate director of administration, responsible for overseeing its billing department, admitted that PCA submits appeals to insurance companies at least 50 times a year.  Yet, in spite of the fact that PCA was in possession of the Plan at least as early as the fall of 2009, and that the Plan clearly instructs how benefits determinations should be appealed, there is no evidence that PCA made any effort to comply with such procedures regarding the benefits determinations at issue in this case.

   PCA nevertheless maintains that such efforts would have been futile, pointing to deposition testimony given by the Fund's administrative manager, George Laufenberg, that if the Plan had ever received an appeal from a non-participating surgicenter, it would likely have been "disregarded." (Laufenberg Dep. at 45:1.)  PCA's argument, however, takes this testimony out of context.  The transcript reflects that Laufenberg was not testifying, as PCA's argument suggests, that the Fund had a policy of denying appeals of out-of-network benefits determinations, but rather that, in his view, because an out-of-network provider has no contractual arrangement with the Fund, it has no standing under the Plan to claim benefits or pursue appeals.  Even if it were the case that the Fund would not entertain an appeal filed by an

out-of-network provider, PCA provides no evidence that it had been advised of this position, such that PCA would have been justified in deciding not to pursue an apparently futile appeal. In other words, the Laufenberg testimony amounts to no more than an attempt to justify an earlier course of action with after-acquired facts learned in discovery. It sheds no light on the futility question. This is particularly so because had PCA known at the time of the benefits determinations that the Fund believed that PCA had no right to appeal, PCA could have conferred with its Plan-covered patient so that the patient, who indisputably remained financially responsible for the facility charge, could file the appeal.

PCA also points to the testimony of various witnesses from the Fund who testified that, as a general practice, the Fund adhered the Plan's fee schedule and would not pay any amount in excess of 120% of the Medicare-approved fee. While this evidence may arguably indicate the futility of an appeal, it does not suffice, when weighed against the other factors and circumstances of this case, to carry Plaintiff's burden of making a "clear and positive" showing of futility. Moreover, contradicting PCA's suggestion of routine denials of appeals, the Fund points to the fact that E.C., one of the Plan participants whose PCA facility claim is at issue in this lawsuit, successfully appealed the benefits determination made by the Fund as to the surgical services provided at PCA by Dr. Rosenwasser, an out-of-network provider. In that appeal, the Board of Trustees decided that the Fund would pay 50% of the remaining balance of the surgeon's bill.

In short, while the Fund has carried its burden of establishing the affirmative defense of failure to exhaust, PCA has not come forward with sufficient evidence to warrant excusing the exhaustion requirement on grounds of futility. In view of this, the Fund is entitled to summary judgment on PCA's ERISA claim for benefits.

The Court must note that, in its motion papers, PCA raises various arguments taking issue with the Plan and the Fund's administration of the Plan. It mainly contends that the Fund improperly modified the Plan in adopting its fee schedule, failed to publish the fee schedule in writing and failed to make appropriate disclosures Plan documents as required by ERISA. These arguments essentially express an ERISA breach of fiduciary duty claim, pursuant to ERISA § 502(a)(3), because they base PCA's claim for relief on the Fund's purported violation of ERISA statutory requirements as opposed to violation of the Plan itself. See Harrow, 279 F.3d at 253-54 (distinguishing ERISA § 502(a)(1)(B) claim for benefits, which call for interpretation of the plan, from other ERISA claims, such as breach of fiduciary duty, which arise from violations of substantive statutory provisions). The Third Circuit has cautioned against re-casting an ERISA claim for benefits as one seeking relief for a statutory violation. Id. at 254-55. In this case, the only remaining claim pled by PCA in its Second Amended Complaint alleges that the Fund's refusal to pay benefits "has breached the terms of the Plan with Plaintiff's assignors, causing Plaintiff damage in the amount of not less than $194,351.77."[4] (Second Am. Compl., ¶ 11.) In

---

[4] The other claim which was pled in the Second Amended Complaint, based on unfair claims settlement practices in violation of N.J.S.A. 17B:30-13.1, has been abandoned by Plaintiff. PCA does not oppose Defendant's motion for summary judgment insofar as the motion seeks judgment on that claim. In fact, PCA states in its brief in opposition to Defendant's motion for summary judgment that it voluntarily withdraws that claim. (See Pl. Op. Br. at 7, n.1.)

other words, for reasons explained above, pursuant to the principles of complete ERISA preemption, PCA's Second Amended Complaint must be construed to plead a claim for benefits under ERISA § 502(a)(1)(B). Plaintiff, in arguing that it is entitled to summary judgment, appears to shift the gravamen of its claim and attempts to introduce new theories of relief. These revised theories and claims cannot be considered by the Court, as it is well-established that a party cannot amend its complaint through briefing submitted on dispositive motions. Federico v. Home Depot, 507 F.3d 188, 201-02 (3d Cir. 2007). Moreover, despite having amended its Complaint twice, PCA continued to pursue only its Plan-based underpayment claim and did not give notice of any other legal or factual bases for this action.

### III. CONCLUSION

For the foregoing reasons, the Court will grant Defendant's motion for summary judgment on Plaintiff's ERISA claim for failure to exhaust, and accordingly deny Plaintiff's motion. An appropriate form of order will be filed together with this Opinion.

                                                  s/ Stanley R. Chesler
                                              STANLEY R. CHESLER
                                              United States District Judge

DATED: April 16, 2012